IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

WESTERN HERITAGE INSURANCE CO.,  }
                                 }
    **Plaintiff,**               }
                                 }
v.                               }   CASE NO.  4:04-CV-0067-RDP
                                 }
PRIME PLUS GROUP, INC., d/b/a    }
MAGNOLIA RESTAURANT,             }
                                 }
    **Defendant.**               }

## MEMORANDUM OPINION

Now pending before the court is Plaintiff's Second Motion for Summary Judgment of Non-Coverage (Doc. # 21) with accompanying evidentiary submissions, both filed on February 25, 2005.[1] The court also has before it Defendant's Response (Doc. # 23) to Plaintiff's motion, filed March 16, 2005, and Plaintiff's Reply (Doc. #24) filed March 29, 2005.[2] For reasons explained more fully below, Plaintiff's Second Motion for Summary Judgment of Non-Coverage is due to be granted.

**I.     Undisputed Factual Background**

On December 15, 2001, Walter Smith was having a drink in the lounge section of Magnolia Restaurant ("Defendant") when an altercation between two customers broke out. Two bouncers, both employees of Defendant, attempted to stop the altercation and remove the fighting customers.

---

[1] On July 9, 2004, Plaintiff filed its First Motion for Summary Judgment of Non-Coverage. After a review of the briefs and evidence presented by both parties at that time, this court, by its August 31, 2005 Order concluded that the factual record was insufficiently developed to grant summary judgment. Accordingly, Plaintiff's July 9, 2004 motion was denied.

[2] This court's April 12, 2005 Order set oral argument for April 26, 2005 at 10:00 AM. Due to a schedule conflict, the oral argument was cancelled. Though the court originally intended to reschedule the argument, having reviewed the briefs and evidence, the court concludes that oral argument is not necessary.

As the bouncers attempted to remove them, the customers continued fighting and another patron standing nearby was allegedly knocked over and fell on Walter Smith's leg. As a result, Walter Smith's foot was broken, and on March 24, 2003, Walter Smith filed suit in the Circuit Court for Marshal County, Alabama, alleging negligence, wantonness and violation of the Dram Shop Act against Defendant.

Western Heritage Insurance Company ("Plaintiff") was Defendant's liability insurer during the relevant time-frame. After Mr. Smith filed his suit against Defendant in state court, Plaintiff filed this action in this court on January 13, 2004, seeking a declaratory judgment that Plaintiff was not obligated to defend or indemnify Defendant under the terms of its commercial insurance Policy No. SCP391380. Plaintiff's policy provided coverage for Defendant between August 12, 2001, and August 12, 2002. The portions of the policy relevant to this action are the Commercial General Liability ("CGL") and the Commercial Liquor Liability ("CLL") sections. The CGL states that Plaintiff is obligated to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (Pl. Ex. H.). The CLL provides that Plaintiff is obligated to pay:

> [T]hose sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of selling, serving or furnishing of any alcoholic beverage.

(Pl. Ex. H.). Both the CGL and the CLL are subject to the Assault and Battery Exclusion which provides as follows:

> This policy does not apply to 'bodily injury' . . . arising out of assault **or** battery **or** out of any act or omission in connection with the prevention or suppression of such acts, including failure to warn, train or supervise, whether caused by or at the instigation or direction of the insured, his employee, patrons or any other person.

(Pl. Ex. H) (emphasis added).

**II.     Summary Judgment Standard**

Under FED.R.CIV.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

**III.     Substantive Law and Analysis**

It is a well settled principle of Alabama law that "where there is no ambiguity in the terms of an insurance contract, it is the duty of the Court to apply its terms and enforce the contract as written." Upton v. Mississippi Valley Title Ins. Co., 469 So. 2d 548, 554 (Ala. 1985); Gregory v. Western World, Inc., 481 So. 2d 878, 881 (Ala. 1985). This principle applies not only to the general terms of a contract, but to any exclusions as well. Id. However, "the insurer bears the burden of proving the applicability of any policy exclusion." Acceptance Ins. Co. v. Brown, 832 So. 2d 1, 12 (Ala. 2001). Where an exclusion or policy term is ambiguous, the language "should be construed favorably to the insured." Buford Equipment Co., Inc. v. Centennial Ins. Co., 857 F. Supp. 1499, 1504 (M.D. Ala. 1994); Antram v. Stuyvesant Life Ins. Co., 287 So. 2d 837, 840 (Ala. 1973). Nevertheless, "[t]he mere fact that adverse parties contend for different constructions [of a particular policy provision] does not itself force the conclusion that the disputed language is ambiguous." Upton, 469 So. 2d at 554 (quoting Antram, 287 So. 2d at 840).

Defendant directs the court's attention to Gregory v. Western World Ins. Co. and argues that the assault and battery exclusion is not applicable because Smith was not the intended victim of the original assault.[3] This, according to Defendant, creates an ambiguity in the terms of the exclusion,

---

[3] Defendant also cites to Acceptance Ins. Co. v. Brown and argues that the instant case requires a showing of the exact intent of the parties involved in the alleged assault, including a determination that Smith was the intended victim of the assault. In Brown, the intent of Mrs. Brown was important because she was the alleged perpetrator of the assault. 832 So. 2d at 13. If her actions were accidental, then the plaintiff's injury in that case would not be the result of assault, and coverage would have been due. Id. The court allowed the case to go to a jury on the question of assault and battery because Mrs. Brown "presented evidence from which the jury could have found that [the] shooting was 'accidental' and not the result of an assault and battery." Id. In contrast, here Defendant presents no evidence that Smith's injury was accidental. Rather, all of the available evidence indicates that Smith's injury was the result of an assault and battery.

4

requiring this court to deny summary judgment. Gregory does not support such an argument.

In Gregory, the court addressed an assault and battery exclusion very similar to the one at issue in this case. 481 So. 2d at 881 ("the insurance does not apply to bodily injury . . . arising out of assault and battery . . . whether caused by or at the instigation or direction of . . . patrons or any other person."). The court construed the clause to mean that "if the claimed injury arises out of an assault and battery caused by a patron, insurance coverage is excluded." Id. At no point did the Gregory court make a distinction between (1) an injury inflicted where the plaintiff was the intended victim and (2) an injury that occurred "indirectly" (i.e., was unintended), such as the one here. In this case, the terms of the assault and battery exclusion are not ambiguous. The language of the exclusion extends to cover instances in which the victim was not the actual object of the assault. Had Plaintiff wished to limit its policy exclusion to only extend to such injuries, it could have done so. However, no such distinction has been made, and Plaintiff is entitled to have the exclusion enforced as it is written. Upton, 469 So. 2d at 554. Moreover, as already noted, merely because Defendant argues for a different meaning of the language does not mean the terms of the exclusion are ambiguous. Id.

Having determined that the exclusion is not legally ambiguous, the court turns to the central issue in the parties dispute - whether an actual assault and battery occurred which resulted in Smith's injury.

> [In Alabama] assault is defined as: 'an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.'

Martin v. Anderson, 107 F. Supp. 2d 1342, 1351 (M.D. Ala. 1999) (citations omitted). A completed assault is a battery, "and consists of touching another in a hostile manner." Id.[4]

Addressing the existence of an assault and battery, both parties rely almost exclusively upon the deposition testimony of Ricky Wayne Davis ("Davis"), a bartender who was working the evening of the incident involving Smith. (Pl. Ex. E at 9). In his deposition, Davis testified as follows:

Q. (Attorney) Did you see the altercation itself?

A. (Davis) No, I just saw the aftermath.

Q. Now, backing up to that, when you say you saw the aftermath, the first thing that you saw was what?

A. Was the bouncers carrying out the people that were in the fight.

Q. And so you didn't see what you refer to as a fight? You didn't see that, did you?

A. With them going at it fighting?

Q. Yes.

A. Oh yes, they were fighting all the way through the door.

(Pl. Ex. E at 16-17). Davis also testified, consistently, that the two people in the altercation "were

---

[4] More specifically, battery is defined as:

> an injury actually done to the person of another in an angry or revengeful or rude or insolent manner . . . or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another. The wrong here consists, not in the touching, so much as in the manner or spirit in which it is done . . . Thus to lay hands on another in a hostile manner is a battery although no damage follows.

Surrency v. Harbison, 489 So. 2d 1097, 1104 (Ala. 1986) (quoting Singer Sewing Machine Co. v. Methvin, 63 So. 997, 1000 (Ala. 1913)).

fighting all the way through the door. The bouncers were dragging them through the door. That's when he [Smith] started hollering, 'My leg is broke. My leg is broke.'" (Pl. Ex. E at 24). Finally, Davis testified that the bouncers "were pulling them [fighting patrons] apart trying to keep them separated, and they kept - And one of the bouncers was small, so they couldn't keep them apart." (Pl. Ex. E at 24).

Defendant argues that Davis's testimony does not establish the existence of an assault and battery because he did not see the beginning of the fight. Specifically, Defendant avers "there is nothing in the record to reflect blows passing or any touching of any nature." (Doc. # 23 at 4). Contrary to Defendant's assertions, Davis's testimony indicates that he did in fact see the two patrons in contact with one another and that the fight was ongoing as the bouncers removed the patrons. Davis's undisputed testimony leaves no doubt that the patrons were touching each other, or at least threatening to do so, in a hostile manner. Furthermore, the very fact that the bouncers had significant difficulty separating the patrons, supports the inference that both individuals had "the present ability to effectuate," a battery. Martin, 107 F. Supp. 2d at 1351. While Davis doesn't describe in detail the nature of the touching, at the very least his testimony is sufficient to place the conduct of the fighting patrons squarely within the definition of assault and likely both assault and battery. See Surrency, 489 So. 2d at 1104 (quoting Singer Sewing Machine Co, 63 So. at 1000).[5]

Finally, Defendant argues that even if an assault occurred, there is insufficient evidence to conclude that Smith's injury actually arose out of the assault. Davis, the bartender, admits that he

---

[5] Even assuming arguendo that there was no actual assault as the Defendant contends, the assault and battery exclusion extends to cover "any act or omission in connection with the prevention or suppression of such acts [assault or battery]." (Pl. Ex H). Accordingly, if the bouncers employed by Defendant were merely trying to stop an assault that was about to happen the exclusion would still apply.

did not see Smith get injured (Pl. Ex. E at 24-25), and Nick Saviolakis, the owner of Defendant, also has no knowledge as to how Smith's leg was actually broken. (Pl. Ex. F. at 10). However, Smith himself testified in his deposition in the underlying state court lawsuit that he fell as a result of the fight involving the bouncers. (Pl. Ex. G at 20-22).[6] According to Smith, the fighting patrons and the bouncers fell on top of him and broke his leg. (Pl. Ex. G at 21). Defendant presented no conflicting evidence on this issue. Were there testimony from another witness that Smith fell of his own accord and not because of the fight, then a material issue of fact would exist. Had Defendant offered evidence that Smith is not credible or that his version of the events was disputed by substantial evidence, then a material issue of fact would exist. However, given the evidence that does exist and is not disputed, the only conclusion a reasonable jury could reach is that Smith's injury arose out of the assault, and the Plaintiff is entitled to judgment as a matter of law.

## IV.   Conclusion

The evidence establishes that no material issues of fact exist. The insurance policy is unambiguous and provides that any injury arising out of an assault and battery is not covered. No reasonably jury could conclude that there was not an assault and battery, and there is no genuine issue that Smith's leg was broken as a result thereof. Accordingly, Plaintiff's Second Motion for Summary Judgment of Non-Coverage is due to be granted. A separate order consistent with the

---

[6] The testimony of Nick Saviolakis and Walter Smith presented by Plaintiff is excerpted from depositions taken pursuant to the underlying state court action between Smith and Defendant. The court acknowledges that an argument might exist that this testimony should not be considered on summary judgment because the depositions were taken in a different case. However, Defendant has made no objection to this evidence. Moreover, because this evidence could undoubtedly be introduced at trial in an admissible form (that is by actually calling the witnesses) the court may properly consider it here. See McMillian v. Johnson, 88 F.3d 1573, 1584-1585 (11th Cir. 1996) (holding that Rule 56 allows "otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form.").

foregoing will be entered this day.

  **DONE** and **ORDERED** this \_\_\_\_18th\_\_\_\_ day of May, 2005.

              _____
              **R. DAVID PROCTOR**
              UNITED STATES DISTRICT JUDGE